THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JASON M. SHARP, Defendant-Appellant.

Fourth District   No. 4—02—0913

Opinion filed March 2, 2005.

TURNER, J., specially concurring.
COOK, P.J., dissenting.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Jerry A. Johnson, State's Attorney, of Clinton (Norbert J. Goetten, Robert J. Biderman, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 2002, a jury convicted defendant, Jason M. Sharp, of predatory criminal sexual assault of a child, finding that he committed an act of sexual penetration with J.E. when she was under 13 years of age (720 ILCS 5/12—14.1(a)(1) (West Supp. 2001)). The trial court later sentenced him to 20 years in prison.

Defendant appeals, arguing that (1) the trial court erred by admitting certain hearsay testimony in violation of (a) the confrontation clause of the sixth amendment (U.S. Const., amend. VI) and (b) section 115—10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10 (West 2000)) and (2) he was denied a fair trial by the prosecutor's rebuttal argument. We disagree and affirm.

## I. BACKGROUND

In January 2002, the State charged defendant (who was then 20 years old) with predatory criminal sexual assault of a child, alleging that he committed an act of sexual penetration with J.E. (who was 11 years old at the time of the offense and 12 years old at defendant's trial) by placing his penis in her vagina (720 ILCS 5/12—14.1(a)(1) (West Supp. 2001)). In February 2002, the State filed a motion under section 115—10 of the Code (725 ILCS 5/115—10 (West 2000)), seeking to offer at defendant's trial statements J.E. made to (1) her mother, Lydia E., (2) Mary Whitaker, the associate director of operations for the McLean County Children's Advocacy Center, and (3) her then-14-year-old friend, Tasha B.

### A. The Section 115—10 Hearing

At a March 2002 hearing on the State's section 115—10 motion, Lydia testified that on January 2, 2002, she heard from her then-15-year-old son, Jesse E., that defendant had had sexual intercourse with J.E. Later that day, Lydia had a conversation with J.E. Lydia first said, "[J.E.], I heard a rumor today," to which J.E. responded, "What, Mom?" Lydia then said "[I heard that defendant] had sex with my little girl." J.E. initially denied it, and Lydia said, "Okay, honey, you know it's one thing for two adults to be having sex, but when a 20[-] some[-]year[-]old man is having sex with an 11 year old, that's rape, and it's wrong, and you need to tell me." At that point, J.E. burst into

tears and said, "Yes, I told him to stop, but he wouldn't." Lydia then asked J.E. if defendant penetrated her, and J.E. responded that she did not know what the term "penetrated" meant. Lydia explained the term, and J.E. said that defendant had penetrated her. J.E. also told Lydia that defendant had pushed her into a building at the local fairgrounds and sexually assaulted her. Lydia then telephoned the police and reported the incident.

Whitaker testified that on January 11, 2002, she interviewed J.E. in the De Witt County sheriff's department "victim[-]sensitive interview room." Whitaker explained that the room had a "living[-]room setting" and was set up so that the alleged child victim would not be distracted. She also explained that Jo Sipes, an Advocacy Center staff member, was present during the interview, and the interview was audiotaped and later transcribed. For the purpose of the section 115—10 hearing, the trial court admitted in evidence the transcript and original audiotape of the interview. The transcript and audiotape showed that Whitaker asked J.E. open-ended questions and resorted to leading questions only to clarify details. After initial general questioning, Whitaker showed J.E. a drawing of an anatomically correct female child, and J.E. identified certain body parts, including the vagina (which J.E. referred to as "Peechacho"). J.E. then described the incident. In particular, J.E. stated that after she, Tasha, defendant (whom J.E. did not know), and Billy Joe W. (a 12- or 13-year-old boy whom J.E. knew), walked to the county fairgrounds, defendant and Billy Joe walked up the grandstand stairway. Defendant tried to convince J.E. and Tasha to walk up the stairway, but they refused. Following several requests by defendant, J.E. and Tasha agreed to walk up the stairway. When they reached the stairway land-ing, defendant pulled J.E. into a room, while Tasha and Billy Joe remained at the top of the stairway. After defendant pulled J.E. into the room, he tripped her, and she fell to the floor. Defendant then pulled down J.E.'s pants and underwear, took off his own pants and underwear, pinned J.E. down by holding her arms, and got on top of her. J.E. put her hands out in front of her and told defendant to "stop now." She told him to stop "about [5] to [10] times." Defendant did not respond to J.E.'s requests and, instead, continued to hold her down.

Whitaker asked J.E. what happened next, but J.E. did not respond. Then Whitaker showed J.E. a drawing of an anatomically correct male and asked the following questions to which J.E. gave the following answers:

"[WHITAKER]: Okay[,] use whatever words you want, and you know what you, you don't even have to use a specific word[,] you can just tell me what happened.
[J.E.]: He stuck his [']thing['] in ***.

[WHITAKER]: Okay you said he stuck his [']thing['] in \*\*\*?

[J.E.]: My Peechacho.

[WHITAKER]: [Your] Peechac[h]o okay. When you say his [']thing[,'] what what's his [']thing[']? You know another word for that, or would you like to use the drawing?

[J.E.]: His pee pee."

Whitaker then clarified that J.E. knew the difference between "inside" and "outside." J.E. told Whitaker that after defendant put his "pee pee" inside her, he put his pants back on and told her to pull up her pants. J.E. then found Tasha and ran down the grandstand stairway. She acknowledged telling Lydia about the incident but denied telling Tasha about it. J.E. also said that when Jesse asked her if it was true that defendant had "screwed" her, she denied it because she was "too embarrassed."

Tasha testified that after she and J.E. left the fairgrounds, J.E. told her that defendant had had sex with J.E.

After considering the testimony and counsel's arguments, the trial court took the matter under advisement. Later in March 2002, the court entered a docket entry order in which it (1) granted the State's motion seeking to offer at defendant's trial statements J.E. made to Lydia and Whitaker and (2) denied the State's motion seeking to offer the statements J.E. made to Tasha.

## B. Trial Testimony

At defendant's September 2002 trial, J.E. testified as to the circumstances surrounding how she, defendant, Tasha, and Billy Joe ended up in the grandstand of the fairgrounds on December 1, 2001. J.E. did not know the exact time the four of them walked to the fairgrounds, but it was "turning dark." After they walked up the grandstand stairs, defendant opened a door, pushed J.E. inside a room, and shut the door. Tasha and Billy Joe remained outside the room on the stairway landing. Once inside the room, defendant tripped J.E. and pushed her to the floor.

J.E. did not respond on direct examination to five different questions about what defendant did to her when they were alone inside the room. However, she stated that she told defendant to "stop" about five times. J.E. also stated that everything she told Whitaker during the January 11, 2002, interview was true and accurate.

On cross-examination, J.E. answered all of defense counsel's questions (which were of a general sort) regarding (1) J.E.'s activities on the day in question and (2) a description of the room involved. Defense counsel elected not to ask her any questions as to what happened in the room when defendant and she were in it together.

Tasha testified that after she, J.E., Billy Joe, and defendant walked

up the grandstand stairway, defendant took J.E. into the room at the top of the stairs. Tasha and Billy Joe sat on a couch on the stairway landing. Shortly thereafter, Tasha heard J.E. say, "Stop it, ouch, that hurts" and "Leave me alone." She recalled hearing J.E. say "Ouch" more than once. After around 15 to 30 minutes, when it was "about dark," J.E. and defendant came out of the room, and Tasha and J.E. walked to Tasha's residence.

Jesse testified that on December 31, 2001, he heard a rumor about defendant and J.E. That evening, he and two friends, Daniel Taylor and Steven Wisegarver, went to defendant's residence to confront him about the rumor. Defendant, who was there alone, let them in, and the four of them sat down in defendant's bedroom. Defendant said he had something to tell Jesse and then left the bedroom for a short time. When defendant returned, he told Jesse that he had "fucked [Jesse's] sister." (J.E. is Jesse's only sister.) Jesse "freaked out," pinned defendant down, and they had "some words." Jesse, Taylor, and Wisegarver then left.

Taylor testified and gave substantially the same version of events that took place at defendant's residence on December 31, 2001, as did Jesse.

Wisegarver testified that after he, Jesse, and Taylor arrived at defendant's residence on the evening of December 31, 2001, the four of them sat down in defendant's bedroom. They were "just talking" when Jesse asked defendant if the rumor about defendant and J.E. was true. Defendant replied that it was and then said, "I fucked [Jesse's] sister."

Lydia testified substantially the same as she had at the section 115—10 hearing regarding the statements J.E. made to her on January 2, 2002. However, she also stated that when she initially told J.E. about the rumor that defendant had had sex with J.E., J.E., who was drinking a soft drink, nodded her head.

Whitaker testified substantially the same as she had at the section 115—10 hearing regarding the statements J.E. made to her on January 11, 2002. The court admitted in evidence the State's exhibit No. 2, which Whitaker identified as a true and accurate audiotape of the January 11, 2002, interview. The court then allowed the State to play the audiotape for the jury.

Defendant presented two alibi witnesses regarding the late afternoon of December 1, 2001, but did not testify himself. On this evidence, the jury convicted defendant. This appeal followed.

## II. ANALYSIS

### A. J.E.'s Hearsay Statements

*1. Admissibility of the Statements Under the Confrontation Clause*

Defendant first argues that because section 115—10 of the Code created a hearsay exception that is not "firmly rooted" in the common law, the confrontation clause of the sixth amendment (U.S. Const., amend. VI) required that J.E.'s statements to Lydia and Whitaker possess " ' "particularized guarantees of trustworthiness" ' " (*People v. Williams*, 193 Ill. 2d 306, 350, 739 N.E.2d 455, 478 (2000), quoting *Idaho v. Wright*, 497 U.S. 805, 816, 111 L. Ed. 2d 638, 653, 110 S. Ct. 3139, 3147 (1990), quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539 (1980), *overruled on other grounds in Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004)). For the following reasons, we conclude that the confrontation clause is not an issue under the circumstances of this case.

In *People v. Miles*, 351 Ill. App. 3d 857, 815 N.E.2d 37 (2004), this court addressed the same argument defendant raises here. We first noted that the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. at 60, 158 L. Ed. 2d at 198, 124 S. Ct. at 1369, rendered the phrases "indicia of reliability" and "particularized guarantees of trustworthiness" irrelevant to confrontation-clause analysis. *Miles*, 351 Ill. App. 3d at 864, 815 N.E.2d at 43. We further noted that the *Crawford* Court held that when " 'the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements.' " *Miles*, 351 Ill. App. 3d at 864, 815 N.E.2d at 44, quoting *Crawford*, 541 U.S. at 60 n.9, 158 L. Ed. 2d at 198 n.9, 124 S. Ct. at 1369 n.9.

Although we adhere to our decision in *Miles*, we now further consider what the *Crawford* Court meant when it wrote about the hearsay declarant appearing for cross-examination at trial. In addition, we determine whether, under the circumstances of this case, the complainant, J.E., "appear[ed] for cross-examination at trial," so that the introduction of her hearsay statements to Lydia and Whitaker did not implicate the confrontation clause.

### a. What It Means To "Appear for Cross-Examination"

The Supreme Court in *Crawford* did not explain what it means for a declarant to "appear for cross-examination." However, the Court's decision in *Crawford* neither overruled nor called into question its two earlier decisions that addressed and resolved this issue: *Delaware v. Fensterer*, 474 U.S. 15, 88 L. Ed. 2d 15, 106 S. Ct. 292 (1985) (*per*

*curiam*), and *United States v. Owens*, 484 U.S. 554, 98 L. Ed. 2d 951, 108 S. Ct. 838 (1988).

In *Fensterer*, 474 U.S. at 18, 88 L. Ed. 2d at 18, 106 S. Ct. at 293-94, the Supreme Court, in a *per curiam* order, held that the confrontation clause does not require exclusion of expert opinion testimony, when the expert is unable to recall the basis for his opinion. In that case, the Delaware Supreme Court reversed the defendant's murder conviction because the prosecution's expert witness could not recall the theory upon which his opinion was based when he testified about cat hairs that were important in linking the defendant to the murder. The Delaware Supreme Court held that, absent an acknowledgment by the expert of the basis of his opinion, " 'defense counsel's cross-examination of the [witness] was nothing more than an exercise in futility.' " *Fensterer*, 474 U.S. at 18, 88 L. Ed. 2d at 18, 106 S. Ct. at 293. In reversing, the Supreme Court stated as follows: "Generally speaking, the [c]onfrontation [c]lause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis in original.) *Fensterer*, 474 U.S. at 20, 88 L. Ed. 2d at 19, 106 S. Ct. at 294.

Three years later, in *Owens*, the Supreme Court held "that neither the [c]onfrontation [c]lause nor Federal Rule of Evidence 802 is violated by admission of an identification statement of a witness who is unable, because of a memory loss, to testify concerning the basis for the identification." *Owens*, 484 U.S. at 564, 98 L. Ed. 2d at 961, 108 S. Ct. at 845. In that case, the defendant was charged with attacking and brutally beating a correctional counselor at a federal prison. As a result of his injuries, the victim's memory was severely impaired. Three weeks after the attack, the victim, although still hospitalized, had sufficiently improved to be interviewed by an FBI agent. During the interview, the victim described the attack, named the defendant as his attacker, and identified him from an array of photographs.

At the defendant's trial, the victim testified that he clearly remembered identifying the defendant as his assailant during his interview with the FBI agent but conceded that he could not then remember seeing his assailant at the time of the attack. Further, despite evidence that he had received numerous visitors during his hospitalization, he was unable to remember any of them except the FBI agent to whom he identified the defendant, and he could not remember whether any of the other visitors had suggested that the defendant was the assailant. Efforts to refresh his recollection were not successful. The Ninth Circuit Court of Appeals reversed the defendant's conviction, but the Supreme Court reversed that court

and reinstated it. In doing so, the Court reaffirmed what it said in *Fensterer*, writing as follows:

"The dangers associated with hearsay inspired the Court of Appeals in the present case to believe that the Constitution required the testimony to be examined for 'indicia of reliability' [citation] or 'particularized guarantees of trustworthiness' [citation]. We do not think such an inquiry is called for when a hearsay declarant is present at trial and subject to unrestricted cross-examination. In that situation, as the [C]ourt recognized in [*California v. Green*, 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970)], the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements. [Citation.] We do not think that a constitutional line drawn by the [c]onfrontation [c]lause falls between a forgetful witness' live testimony that he once believed this defendant to be the perpetrator of the crime, and the introduction of the witness' earlier statement to that effect." *Owens*, 484 U.S. at 560, 98 L. Ed. 2d at 958-59, 108 S. Ct. at 843.

The *Owens* Court also rejected the defendant's argument that the Court of Appeals' decision should be affirmed under Federal Rule of Evidence 802, which generally excludes hearsay. The Supreme Court concluded that the witness was "subject to cross-examination" concerning the prior identification, as that phrase was used in Federal Rule of Evidence 801(d)(1)(C). In so concluding, the Court stated as follows:

"It seems to us that the more natural reading of 'subject to cross-examination concerning the statement' includes what was available here. *Ordinarily a witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions.*" (Emphasis added.) *Owens*, 484 U.S. at 561, 98 L. Ed. 2d at 959, 108 S. Ct. at 844.

■ In *People v. Flores*, 128 Ill. 2d 66, 90, 538 N.E.2d 481, 490 (1989), the Supreme Court of Illinois followed the analysis of the United States Supreme Court in *Fensterer* and *Owens* in rejecting the defendant's argument that a witness' professed memory loss as to the content of a conversation he had with the defendant deprived defense counsel of an opportunity to cross-examine the witness concerning his prior testimony (which was admitted under section 115—10.1 of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1)). The *Flores* court wrote, in pertinent part, as follows:

"The confrontation clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination. [*Delaware v. Fensterer*, 474 U.S. 15, 20, 88 L. Ed. 2d

15, 19, 106 S. Ct. 292, 296 (1985); *Green*, 399 U.S. at 158, 26 L. Ed. 2d at 497, 90 S. Ct. at 1935.] Contrary to the defendant's assertions, a gap in the witness' recollection concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination. See, *e.g.*, *United States v. Owens*, 484 U.S. 554, 98 L. Ed. 2d 951, 108 S. Ct. 838 (1988)." *Flores*, 128 Ill. 2d at 88, 538 N.E.2d at 489.

See also *People v. Redd*, 135 Ill. 2d 252, 310, 553 N.E.2d 316, 342 (1990), where the supreme court cited *Owens*, *Green*, and *Flores* and wrote the following: "As long as the [hearsay] declarant is actually testifying as a witness and is subject to full and effective cross-examination, then the confrontation clause is not violated by admitting the out-of-court statement of the declarant."

### b. J.E. "Appeared" for Cross-Examination at Defendant's Trial

■ As mentioned earlier, J.E., who was then 12 years old, testified at defendant's September 2002 trial at some length regarding what she did and with whom she did it on December 1, 2001. However, at the point in her testimony when she described how defendant pulled her into the room at the top of the grandstand stairway and pushed her down to the floor, she stopped her narrative. When the prosecutor asked her what happened next, the record shows, "No response by witness." The prosecutor tried four more times to get J.E. to relate what happened to her, but each time the record shows, "No response by witness." However, J.E. later testified on direct examination about her activities after defendant released her from the room, mentioning where she went, with whom, and how long she engaged in those activities the rest of the day.

On cross-examination, J.E. answered all of the questions put to her by defense counsel. However, defense counsel made no attempt to cross-examine J.E. regarding what his client did while in the room with her.

Despite J.E.'s apparent unwillingness or inability to testify on direct examination about what defendant did to her in the room, this record demonstrates that J.E. "appeared" for cross-examination at trial within the meaning of *Crawford*. The key inquiry is whether she was present for cross-examination and answered questions asked of her by defense counsel. Because she was present for cross-examination and answered defense counsel's questions, the confrontation clause places absolutely no constraints on the use of J.E.'s prior statements to Lydia and Whitaker. (Because J.E. answered defense counsel's questions on cross-examination, we need not decide what the legal consequences would be, if any, if she had instead answered some, but not all, of those questions.) In other words, the question of the admis-

sibility of those prior statements must be measured *only* by whether they meet the requirements of section 115—10 of the Code (725 ILCS 5/115—10 (West 2002)), as discussed in the next section of this opinion. For purposes of the confrontation clause, because J.E. "appeared" for cross-examination at trial within the meaning of *Crawford*, any prior statement of J.E. being offered at trial is a nonevent.

## 2. *Admissibility of the Statements Under Section 115—10*

Defendant also argues that the trial court erred by admitting J.E.'s statements to Lydia and Whitaker, pursuant to section 115—10 of the Code (725 ILCS 5/115—10 (West 2002)). Specifically, he contends that J.E.'s statements were not reliable.

Initially, we note that defendant has forfeited this issue on appeal by failing to object to J.E.'s statements to Lydia and Whitaker at the section 115—10 hearing. The record shows that defendant objected only to J.E.'s statements to Tasha. However, even assuming that defendant had not forfeited this issue, we nonetheless reject it on the merits.

■ Although the "reliability" test in *Roberts* and *Wright* is defunct as far as the confrontation clause is concerned, it remains a part of the statutory exception to the hearsay rule set forth in section 115—10 of the Code (725 ILCS 5/115—10 (West 2002)). *Miles*, 351 Ill. App. 3d at 865, 815 N.E.2d at 44. Section 115—10(b) of the Code provides that certain evidence shall be admitted as an exception to the hearsay rule under the following circumstances:

"(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child *** either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement[.]" 725 ILCS 5/115—10(b) (West 2002).

When conducting a section 115—10 hearing, a trial court must evaluate the totality of the circumstances surrounding the making of the hearsay statements. Some factors that are important in making the reliability determination include the following: (1) the child's spontaneity and consistent repetition of the incident, (2) the child's mental state, (3) the child's use of terminology unexpected of a child of similar age, and (4) the child's lack of motive to fabricate. *People v. Cookson*, 335 Ill. App. 3d 786, 791, 780 N.E.2d 807, 811 (2002).

The State, as the proponent of out-of-court statements sought to be admitted pursuant to section 115—10 of the Code, bears the burden of establishing that the statements were reliable and not the result of

adult prompting or manipulation. *Cookson*, 335 Ill. App. 3d at 791, 780 N.E.2d at 811. A reviewing court will reverse a trial court's determination pursuant to section 115—10 of the Code only when the record demonstrates that the court abused its discretion. *People v. Bowen*, 183 Ill. 2d 103, 120, 699 N.E.2d 577, 586 (1998). An abuse of discretion occurs when the court's ruling is arbitrary, fanciful, or unreasonable or when no reasonable person would take the same view. *People v. Robertson*, 312 Ill. App. 3d 467, 469, 727 N.E.2d 404, 406 (2000).

■ In this case, we recognize that (1) a 33-day delay occurred between the December 1, 2001, incident and J.E.'s statement to Lydia and (2) J.E. initially denied that defendant sexually assaulted her when Lydia asked her. However, a delay in reporting an assault or initial denials of assault will not automatically render a victim's statements inadmissible under section 115—10 of the Code. *People v. Zwart*, 151 Ill. 2d 37, 46, 600 N.E.2d 1169, 1173 (1992). Thus, as defendant concedes, the timing of J.E.'s statement, standing alone, does not make the statement unreliable. After her initial denial, J.E. began crying and told Lydia that defendant had sexually assaulted her despite her pleas that he stop. Further, Lydia did not coach J.E. as to what she should say. Contrary to defendant's claim, the fact that Lydia had to explain the term "penetrated" to J.E. does not render the statement unreliable. Defendant seems to suggest that if J.E. were a victim of sexual assault, she should be better versed in sexual terminology. However, this was not a case in which a child victim had been "groomed" by a sexual predator and assaulted or abused over a period of time. Instead, J.E. was sexually assaulted on one occasion, and the fact that she did not know the term "penetrated" suggests (if anything) that she was not coached as to what to say.

In addition, the version of events that J.E. shared with Lydia was substantially consistent with the account of the assault she gave to Whitaker. As to Whitaker's January 11, 2002, interview of J.E., we note that Whitaker audiotaped the interview. See *Miles*, 351 Ill. App. 3d at 866, 815 N.E.2d at 45 (in which this court recommended that interviews of alleged child victims be recorded); *People v. Simpkins*, 297 Ill. App. 3d 668, 678, 697 N.E.2d 302, 308 (1998) (in which we put the State "on notice of the risk it takes by not recording interviews"). Whitaker did not coach J.E. on what to say, and she asked leading questions only to clarify details. Further, nothing in the record indicates that J.E. had any motive to lie about the assault by defendant.

Reviewing the record under the appropriate standard of review, we conclude that the trial court did not abuse its discretion by admit-

ting J.E.'s statements to Lydia and Whitaker regarding the sexual assault, pursuant to section 115—10 of the Code (725 ILCS 5/115—10 (West 2002)).

## B. The Prosecutor's Rebuttal Argument

■ Last, defendant argues that he was denied a fair trial by the prosecutor's comments during rebuttal argument. Specifically, he complains that the prosecutor (1) improperly misrepresented that J.E.'s statements to Whitaker were not hearsay and (2) compounded the misrepresentation by commenting that defense counsel's closing argument was a "smokescreen" and defense counsel was "mudslinging." In response to defense counsel's comment during closing argument that the State's case rested "on hearsay evidence and hearsay evidence alone," the prosecutor made the following remarks:

> "Defendant wants to characterize this [case] as nothing but a hearsay case. That's not true at all. Again, that's twisting the facts. [J.E.'s] testimony in her interview where she tells what happened to her, that *** [she was] pinned to the floor and sexually penetrated[,] is not hearsay. That's not hearsay at all, ladies and gentlemen. This case does not revolve around hearsay. [J.E.] just told you what happened to her. She was there. That's not hearsay at all. A [*sic*] whole case does not revolve [*sic*] hearsay. Don't fall for the smokescreen. [Tasha] stated that she was there; she walked out to the fairgrounds, too, and she knows who went into that little room. *** I don't think there is any reasonable doubt in this particular case, but what [defendant] is doing is simply mudslinging, trying to muddy up the waters, trying to confuse the jurors, throw a bucket of mud on the wall and hope some of it sticks somewhere. [The police officer] wasn't at fault. This was 32 days later when he found out about it. This wasn't his fault. It's not [Jesse's] fault. It is not [Wisegarver's] fault. It is not [Taylor's] fault. It is not [Tasha's] fault and it's not [Lydia's] fault. It's not [J.E.'s] fault. The person who is at fault, ladies and gentlemen, is [defendant]. Don't be deceived by the smokescreen."

Defendant concedes that by failing to raise a timely objection at trial, he has forfeited this issue on appeal. Nonetheless, he urges us to review it under the plain-error rule.

Our supreme court has addressed the issue of plain error as follows:

> " ' "[B]efore an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' [Citation.] If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error ' " ' 'seriously affects the

fairness, integrity, or public reputation of judicial proceedings.' " '
[Citations.]" ' " *People v. Crespo*, 203 Ill. 2d 335, 348, 788 N.E.2d
1117, 1124 (2001) (supplemental opinion upon denial of rehearing),
quoting *United States v. Cotton*, 535 U.S. 625, 631-32, 152 L. Ed. 2d
860, 868, 122 S. Ct. 1781, 1785 (2002), quoting *Johnson v. United
States*, 520 U.S. 461, 466-67, 137 L. Ed. 2d 718, 727, 117 S. Ct.
1544, 1549 (1997).

See *People v. Keene*, 169 Ill. 2d 1, 17, 660 N.E.2d 901, 909-10 (1995)
("Plain error marked by 'fundamental [un]fairness' occurs only in
situations which 'reveal breakdowns in the adversary system,' as
distinguished from 'typical trial mistakes' [citation]").

This court will take our supreme court at its word and find plain er-
ror only in exceptional circumstances in which " ' "the error ' " 'seri-
ously affect[s] the fairness, integrity, or public reputation of judicial
proceedings.' " ' [Citations.]" ' " *Crespo*, 203 Ill. 2d at 348, 788 N.E.2d
at 1124, *supplemental opinion upon denial of rehearing*, quoting *Cotton*,
535 U.S. at 631, 152 L. Ed. 2d at 868, 122 S. Ct. at 1785, quoting
*Johnson*, 520 U.S. at 467, 137 L. Ed. 2d at 727, 117 S. Ct. at 1549.

Even accepting defendant's contention that the complained-of
remarks were improper, we conclude that—when viewed in the context
of the parties' closing arguments as a whole—they did not result in
substantial prejudice to defendant or compromise the fairness or
integrity of the trial process. In that regard, we note that (1) the trial
court instructed the jury that closing arguments were not evidence
and arguments not based on the evidence were to be disregarded and
(2) the prosecutor's allegedly improper comments were not overly
extensive. Accordingly, we will not address defendant's argument
under the plain-error doctrine. See *People v. Brooks*, 345 Ill. App. 3d
945, 953, 803 N.E.2d 626, 632 (2004) (in which the appellate court
declined to address on the merits the defendant's claim that the
prosecutor's closing argument denied him a fair trial, upon concluding
that no reason existed to excuse the defendant's procedural default
because the complained-of remarks did not prejudice the defendant or
compromise the integrity or fairness of the trial).

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

JUSTICE TURNER, specially concurring:

Although I fully concur with the majority opinion, I write
separately to voice my disagreement with our dissenting colleague's
conclusion "[t]he applicability of *Crawford* to section 115—10 could

not be clearer. Section 115—10 is unconstitutional." 355 Ill. App. 3d at 804, citing *In re E.H.*, 355 Ill. App. 3d 564, 576 (2005).

A statute is facially unconstitutional only if no circumstances exist in which it could be validly applied. *Lucien v. Briley*, 213 Ill. 2d 340, 344, 821 N.E.2d 1148 (2004). Thus, if a statute permits an unconstitutional procedure, but also allows for a constitutionally correct procedure, the statute is not facially unconstitutional. See *Lucien*, 213 Ill. 2d at 345.

As recognized by the majority opinion (see 355 Ill. App. 3d at 792), the *Crawford* Court noted that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of prior testimonial statements." *Crawford*, 541 U.S. at 60 n.9, 158 L. Ed. 2d at 198 n.9, 124 S. Ct. at 1369 n.9. While section 115—10 does require a judicial determination of the statement's reliability before the statement is admissible, the section also requires that the child declarant either (1) testify at the proceeding or (2) be unavailable as a witness and corroborative evidence of the act that is the subject of the statement exists. 725 ILCS 5/115—10(b)(1), (b)(2) (West 2002). Thus, when the declarant testifies at trial, the hearsay statements admitted under section 115—10 do not violate *Crawford*. See *Miles*, 351 Ill. App. 3d at 864, 815 N.E.2d at 44. Accordingly, section 115—10 clearly provides for the constitutional admission of hearsay statements when the declarant does testify.

Moreover, the *Crawford* Court further stated that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. Hence, where the declarant's statements are nontestimonial, section 115—10 again permits the admissibility of statements that do not violate the confrontation clause. See *In re Rolandis G.*, 352 Ill. App. 3d 776, 784, 817 N.E.2d 183, 190 (2004) (finding the victim's statements to his mother were properly admitted under section 115—10 and did not raise any confrontation-clause issues); see also *People v. R.F.*, 355 Ill. App. 3d 992, 1000-01 (finding *Crawford* did not apply to the victim's hearsay statements to her mother and grandmother that were admitted under section 115—10).

Although the majority opinion properly did not address the nature of the victim's testimony since the victim did testify for confrontation-clause purposes, I will address the nature of the victim's statements to

her mother to further demonstrate that section 115—10 is facially constitutional.

While the Supreme Court in *Crawford* did not provide a comprehensive definition of "testimonial," it did provide some instructive examples. The term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. The *Crawford* Court also provided other clues as to what constitutes testimonial statements. For example, the Court noted "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford*, 541 U.S. at 51, 158 L. Ed. 2d at 192, 124 S. Ct. at 1364. Additionally, in responding to the special concurrence, the Court stated "[i]nvolvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse—a fact borne out time and again throughout a history with which the Framers were keenly familiar." *Crawford*, 541 U.S. at 56 n.7, 158 L. Ed. 2d at 196 n.7, 124 S. Ct. at 1367 n.7. Thus, "*Crawford* indicates that governmental involvement in some fashion in the creation of a formal statement is necessary to render the statement testimonial in nature." *In re T.T.*, 351 Ill. App. 3d 976, 988, 815 N.E.2d 789, 800 (2004); see also *R.F.*, 355 Ill. App. 3d at 1000 (noting *Crawford* applies only to statements made to governmental officials, not those made to nongovernmental personnel such as family members or physicians).

Here, Lydia questioned the child as a concerned and loving parent. Lydia desired to determine if her child had been sexually abused, and she questioned J.E. to determine the veracity of her suspicions. Lydia's questions and J.E.'s responses were not prompted by police officers or any other governmental authority, and I conclude the responses elicited were thus nontestimonial in nature. Because J.E.'s statements to her mother were nontestimonial, *Crawford* is not implicated and admitting these statements under section 115—10 is constitutional.

The dissent's rationale for pronouncing all of section 115—10 unconstitutional based upon *Crawford* is untenable. Its generalization that most child victims are unavailable to testify at trial does not render section 115—10 of the Code unconstitutional where the section clearly provides for circumstances in which hearsay statements are constitutionally admissible. Likewise, for the reasons stated in this

special concurrence, I disagree with the First District's finding section 115—10 is unconstitutional in *E.H.*, 355 Ill. App. 3d at 576.

PRESIDING JUSTICE COOK, dissenting:

I respectfully dissent and would reverse and remand for a new trial. Section 115—10 is in essential conflict with *Crawford*, but the majority would allow section 115—10's use of *ex parte* examinations to continue, by *pro forma* putting the child on the stand even if she is unable to answer a single question.

The majority is complimentary of the questioning of J.E. at the De Witt County sheriff's department. Whitaker, a social worker employed by McLean County to pursue such investigations, "asked J.E. open-ended questions and resorted to leading questions only to clarify details." 355 Ill. App. 3d at 789. Whitaker even audiotaped the interview, following the recommendations issued by this court in other cases. 355 Ill. App. 3d at 797. Whitaker did not coach J.E. on what to say (at least so far as we know). 355 Ill. App. 3d at 797.

The problem, however, is that neither defendant nor his attorney was present for the interrogation. There was no opportunity to cross-examine. What we have here is the principal evil at which the confrontation clause was directed, the use of *ex parte* examinations as evidence against the accused. See *Crawford*, 541 U.S. at 50, 158 L. Ed. 2d at 192, 124 S. Ct. at 1363. The statement taken by Whitaker was clearly testimonial. The similar tape-recorded statement in *Crawford*, "knowingly given in response to structured police questioning, qualifies under any conceivable definition." *Crawford*, 541 U.S. at 53 n.4, 158 L. Ed. 2d at 194 n.4, 124 S. Ct. at 1365 n.4. Whatever else "testimonial" covers, it applies at a minimum to police interrogations. *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374; *People v. West*, 355 Ill. App. 3d 28, 34-35 (2005). The Whitaker questioning, which had as its goal the production of testimony with an eye toward trial, was a police interrogation. Where the Department of Children and Family Services (DCFS) works at the behest of and in tandem with the State's Attorney with the intent and purpose of assisting in the prosecutorial effort, DCFS functions as an agent of the prosecution. *T.T.*, 351 Ill. App. 3d at 989-92, 815 N.E.2d at 801-03 (surrogate testimony of social workers); *Rolandis G.*, 352 Ill. App. 3d at 781, 817 N.E.2d at 188. The Whitaker interrogation was clearly a substitute for testimony at trial. The confrontation-clause errors in this case could not have been harmless. See *T.T.*, 351 Ill. App. 3d at 994-95, 815 N.E.2d at 805 (testimonial statements provided significantly more detail about the assault than evidence properly admitted at trial); *West*, 355 Ill. App. 3d at 41 (reasonable probability admission contributed to convictions); *E.H.*, 355 Ill. App. 3d at 574-75.

The majority seeks to justify the admission of this *ex parte* examination on the basis that J.E. appeared at trial and was "subject to unrestricted cross-examination." *Owens*, 484 U.S. at 560, 98 L. Ed. 2d at 958, 108 S. Ct. at 843. "[A] witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions." *Owens*, 484 U.S. at 561, 98 L. Ed. 2d at 959, 108 S. Ct. at 844. The confrontation clause is not violated where the declarant testifies and is "subject to full and effective cross-examination." *Flores*, 128 Ill. 2d at 88, 538 N.E.2d at 489. There clearly was not unrestricted cross-examination in this case. A declarant who gives only some preliminary testimony is not "available" as a witness. *Rolandis G.*, 352 Ill. App. 3d at 783, 817 N.E.2d at 189-90. A child witness becomes "unavailable" for purposes of section 115—10 when she testifies that the defendant had given her a "bad touch" but then freezes up and refuses to discuss details of the incident. *People v. Coleman*, 205 Ill. App. 3d 567, 583, 563 N.E.2d 1010, 1020 (1990); *Rolandis G.*, 352 Ill. App. 3d at 783, 817 N.E.2d at 189-90 (key is ability to cross-examine the witness).

J.E. did not respond fully and willingly to questions. She would not answer questions about what happened after she and defendant were alone. The State's Attorney asked four variations of the question: "What happened *** after you went to the ground?" In each instance, J.E. remained silent. Defense counsel was entitled to accept the answers to the prosecutor's questions and was not required to re-ask the questions, risking antagonizing the jury for no purpose other than to bail out the prosecution. See *Bowen*, 183 Ill. 2d at 114-15, 699 N.E.2d at 584 ("Catch-22" if defense must either call the child and risk inflaming the jury against it or forgo completely its right to cross-examine).

*Crawford* was not a children's hearsay case, and neither were *Owens* and *Fenster*, the cases cited by the majority. Those unusual cases were not mentioned by *Crawford*. See *Miles*, 351 Ill. App. 3d at 869-70, 815 N.E.2d at 47-48 (Cook, J., specially concurring). Inability to testify is *not* unusual in children's hearsay cases. In most cases child victims, due to their tender years, are unavailable to testify at trial. *T.T.*, 351 Ill. App. 3d at 997, 815 N.E.2d at 807 (O'Mara Frossard, P.J., specially concurring). It is a stretch to justify a statute where witnesses are routinely not available for cross-examination on the basis of the isolated cases cited by the majority. The solution provided by section 115—10, allowing children's statements without cross-examination, provided they are found reliable by a judge, was specifically rejected in *Crawford*. *T.T.*, 351 Ill. App. 3d at 997, 815 N.E.2d at 807 (O'Mara Frossard, P.J., specially concurring).

Even where the declarant is "available" for cross-examination, hearsay may not be admitted unless it fits within some recognized exception, statutory or otherwise. The presence of the declarant in court does not excuse compliance with the hearsay rule. *People v. Lawler*, 142 Ill. 2d 548, 557, 568 N.E.2d 895, 899 (1991). Is there anything left of section 115—10? Is it still a recognized exception? Section 115—10's test for admissibility relies on an *ad hoc* judicial determination of the reliability of the statement, contrary to the very essence of *Crawford*. R. Ruebner & T. Scahill, *Crawford v. Washington, the Confrontation Clause and Hearsay: A New Paradigm for Illinois Evidence Law*, ___ Loy. U. Chi. L.J. (forthcoming). *Crawford* was very critical of "sufficient safeguards of reliability" hearings. *Crawford*, 541 U.S. at 63, 158 L. Ed. 2d at 200, 124 S. Ct. at 1371 ("amorphous," "unpredictable," "demonstrated capacity to admit" statements that should be excluded). It is questionable whether the legislature would reenact portions of a statute which are dependent upon such a highly criticized test. *People v. Warren*, 173 Ill. 2d 348, 372, 671 N.E.2d 700, 712 (1996) (test is whether legislature would have passed the valid portions of the statute absent the invalid portions). We should not try to pick out pieces of section 115—10 that might survive *Crawford*. *Fiorito v. Jones*, 39 Ill. 2d 531, 540, 236 N.E.2d 698, 704 (1968) (provisions are not separable if they are essentially and inseparably connected in substance). The legislature should decide whether it wants a new section 115—10, one which will be very different from the one it enacted. *Chapman v. United States*, 500 U.S. 453, 464, 114 L. Ed. 2d 524, 537-38, 111 S. Ct. 1919, 1927 (1991) (construing statutes to uphold them if possible is not a license for the judiciary to rewrite language enacted by the legislature). The applicability of *Crawford* to section 115—10 could not be clearer. Section 115—10 is unconstitutional. *E.H.*, 355 Ill. App. 3d at 576.

In response to Justice Turner's special concurrence, it is not my suggestion that this area is off-limits for the legislature. I suggest only that section 115—10 as it presently exists raises many questions. The legislature may want to rewrite section 115—10, but we should not attempt to do so ourselves.