SIXTH DIVISION

January 16, 2004

No. 1-02-1850

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

LaVANCE BROOKS,

Defendant-Appellant.

)))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Timothy Chambers,

Judge Presiding.

PRESIDING JUSTICE O’MARA FROSSARD delivered the opinion of the court:

After a jury trial, defendant LaVance Brooks was found guilty of armed robbery.  He was sentenced to prison for 20 years.  Defendant appeals his conviction.  He contends he was denied the effective assistance of counsel because his defense counsel failed to invoke the Uniform Rendition of Prisoners as Witnesses in Criminal Proceedings Act (725 ILCS 235/6 (West 2000)) in order to secure alibi witness Robert Austin at trial.  Additionally, defendant claims the closing argument by the prosecution denied him a fair trial.  We affirm.

BACKGROUND

Dion Sarthy was working at Hartigan’s Ice Cream Shop in Evanston on February 18, 2000.  Around 10 p.m. he was in the process of closing the store when two men appeared at the back of the store.  Both wore masks and one was armed with a gun.  When they asked Sarthy for money, he told them the money was in the cash register and in the envelope on the desk.  The two men duct taped Sarthy’s hands and legs and placed him in the freezer.  After about 15 minutes, Sarthy was able to get out of the freezer.  He noticed the cash register was empty, and called the police.  The cash register was located on the other side of the counter, away from the customer area about five to eight feet. 

Officer Josephine Dolinski responded to the call and observed that the register drawer was pulled out.  She lifted prints from the cash register drawer and placed them on a white fingerprint card and in a sealed envelope.  She submitted the envelope with the prints to Detective Jason Parrott.  He sent the prints to Mary Beth Thomas, a forensic scientist at the Illinois Crime Laboratory specializing in latent print examination.  Thomas concluded the latent prints from the cash register drawer did not belong to the store clerk, Dion Sarthy.  As there were no suspects in the case, forensic scientist Thomas scanned one of the latent prints into AFIS (Automatic Fingerprint Identification System), which returned 10 candidates.  Thomas then physically compared the recovered print with the 10 candidates and found only one match.  She obtained the fingerprint card of the potential match and concluded to a reasonable degree of scientific certainty regarding the two latent prints on the cash register drawer that “the person whose copy of the fingerprint card marked LaVance Brooks left both impressions on the latent lift.”

On April 18, 2001, Detective Parrot arrested defendant.  Defendant denied ever being inside Hartigan’s Ice Cream Shop and indicated he had never operated a cash register for any purpose.  Defendant did not testify and called no witnesses.  The jury found defendant guilty of armed robbery.  After a sentencing hearing, the judge considered witnesses in mitigation and aggravation.  The evidence in aggravation included five previous felony convictions and live testimony regarding three pending cases, two deliveries of a controlled substance, and one possession of a controlled substance.  In mitigation, Stephanie Chambers, a friend of defendant, testified for defendant.  She grew up with defendant and takes care of defendant’s son about 85% of the time.  She described defendant as a very responsible, caring, and loving parent.  She also testified that defendant was always helping people in the community.  Defendant was sentenced to 20 years in prison.  Defendant appeals.

CLOSING ARGUMENT

Defendant contends that the prosecution made improper comments that shifted the burden of proof to the defense.  Defendant acknowledges that defense counsel neither objected to the prosecutor’s remarks nor included the alleged error in the posttrial motion.  Defendant asks this court to review his forfeited argument under the plain error rule.  See 134 Ill. 2d R. 615(a).  Supreme Court Rule 615(a) provides that if “substantial rights” are not affected, any such claim “shall be disregarded.”  134 Ill. 2d R. 615(a).  Regarding the difference in analyzing plain error and harmless error, the Illinois Supreme Court in
 People v. Crespo
, 203 Ill. 2d 335, 347-48 (2001), noted:

“An ‘important difference’ between the two analyses lies in the burden of proof: in harmless-error analysis, the State must prove that the jury verdict would have been the same absent the error to avoid reversal, whereas under plain-error analysis, a defendant’s conviction and sentence will stand unless the defendant shows the error was prejudicial.  [Citations.]”

Before a reviewing court may correct plain error, that is, error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects the defendant’s substantial rights. 
 Crespo
, 203 Ill. 2d at 348, quoting
 United States v. Cotton
, 535 U.S. 625, ___, 152 L. Ed. 2d 860, 868, 122 S. Ct. 1781, 1785 (2002).  When all three conditions are satisfied, a court of review may exercise its discretion to notice a forfeited error, “ ‘but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.’ ”
  Crespo
, 203 Ill. 2d at 348, quoting
 Cotton
, 535 U.S. at ___, 152 L. Ed. 2d at 868, 122 S. Ct. at 1785.  With those principles in mind, we address defendant’s contention that based on improper closing argument 
by the State his conviction should be reversed and the case should be remanded for a new trial.

A. Comment By Prosecution Was  Error

The argument that defendant contends improperly shifted the burden of proof to the defense and misstated the law occurred at the conclusion of the opening closing argument by the prosecution as follows:

“There’s no question, ladies and gentlemen, there’s no issue as to identification as to who was in that store.  When you go back into the jury room, the presumption of innocence which Judge Chambers told you about as you were being selected as jurors and which you will receive in your jury instructions[,] that presumption, that cloak of innocence is gone.  When you go back into the jury room and deliberate and find this defendant guilty of the only verdict which you can possibly do under the evidence, and that is to find defendant guilty of armed robbery.  Thank you.”  

 There is no dispute that defense counsel neither objected to the comment made by the prosecution nor included the alleged error in the posttrial motion.  In its brief, the State argues that “the prosecutor was not telling the jury that the presumption of innocence was presently gone[;] rather[,] he told them that when they returned to the jury room and looked at the evidence, the cloak of innocence would be gone because defendant had been proven guilty.”  We disagree with that characterization by the State.  The prosecution, contrary to the State’s brief, did not tell the jury “the cloak of innocence would be gone because defendant had been proven guilty.”  The prosecution in closing argument stated “that presumption, that cloak of innocence 
is
 gone.”  (Emphasis added.)  The prosecution did not state that “that cloak of innocence 
would be
 gone.”  The prosecution misstated the law regarding the presumption of innocence.

We find the cases relied upon by the State to be distinguishable.  In 
People v. Cisewski
, 118 Ill. 2d 163, 178 (1987), the court found no error in the prosecutor’s comment that “[n]ow is the time *** to remove the cloak of innocence.”  In the instant case, the prosecutor stated that the cloak of innocence is gone.  Moreover, the argument did not indicate that after hearing the evidence the defendant was no longer cloaked in innocence.  See 
People v. Tomes
, 284 Ill. App. 3d 514 (1996).  Rather, the prosecutor told the jurors that when they go back to the jury room, “that presumption, that cloak of innocence is gone.”

In 
People v. Keene
,
 169 Ill. 2d 1 (1995), the Illinois Supreme Court indicated that although misstatements of law in closing argument are often held remedied by jury instructions, proper direction may not always undo the harm occasioned and assessment of harm is often a blind exercise for reviewing courts, for records cannot convey a “feel” for the emotional environment and doubt as to the extent of harm is resolved in favor of the defense.  
Keene
, 169 Ill. 2d at 25.  However, 
Keene
 found that the harm had been ameliorated.  
Keene
, 169 Ill. 2d at 26.  Recently, in 
People v. Toney
, 337 Ill. App. 3d 122, 149 (2003), we 
admonished the prosecution that comments in which the presumption of innocence is described as “torn off, shredded, ripped or pulled off” should not be repeated.

In the instant case, the State’s comment that the “presumption, that 
cloak of innocence
 
is gone
” (emphasis added) was a misstatement of the law.  The defendant enjoys the benefit of the presumption of innocence until the point during deliberation when the jury concludes that there existed proof of guilt beyond a reasonable doubt.  See 
People v. Viser
, 62 Ill. 2d 568, 585-86 (1975).  Having found this comment to be a misstatement of the law, we next determine whether that statement was prejudicial error affecting defendant’s substantial rights.

B.  Impact of Error on Defendant’s Substantial Rights

We are mindful that prosecutors are afforded wide latitude in making closing arguments, and a reviewing court will not reverse a jury’s verdict based upon improper remarks made during closing arguments unless the comments resulted in substantial prejudice to the defendant and constituted a material factor in his conviction.  
People v. Alvine
, 173 Ill. 2d 273 (1996);
 People v. Foster
, 322 Ill. App. 3d 780, 790 (2000).  The trial court can generally correct any error resulting from an improper remark by sustaining an objection or instructing the jury. 
 Foster
, 322 Ill. App. 3d at 791.  Moreover, the requisite harm for reversal has been described as “manifest prejudice” in the context of repeated misstatements of law that destroy the presumption of innocence.  See
 People v. Weinstein
, 35 Ill. 2d 467, 470 (1996).

In the instant case, however, the State made only one reference to the presumption of innocence.  We note that the number of times the jury is confronted with a misstatement of law is relevant in evaluating the nature and extent of the harm.  
Keene
, 169 Ill. 2d at 25-26.  In the instant case, the misstatement regarding the presumption of innocence occurred not in rebuttal, but at the conclusion of the opening closing argument made by the prosecution.  It was followed by argument by defense counsel, proper rebuttal argument by the prosecution, and jury instructions given by the trial judge.  A trial court’s instruction that closing arguments are not evidence and that arguments not based on the evidence are to be disregarded have been found to ameliorate any prejudice resulting from similar comments.  See 
People v. Walker
, 230 Ill. App. 3d 377 (1992).  The State did not repeat the reference to the presumption of innocence.  The limited nature of the misstatement, together with the timing of the comment and the instructions given by the trial court, ameliorated the extent of  harm.  Based on the record, we do not find the single comment by the prosecution was prejudicial error which affected defendant’s substantial rights.

C.  Error Did Not Undermine Integrity of Trial Proceeding

Regarding the strength or weakness of the evidence, we note that before there were any suspects in the armed robbery, a forensic scientist matched a fingerprint found on the cash register drawer in Hartigan’s Ice Cream Shop to defendant.  Officer Dolinski arrived at Hartigan’s shortly after the armed robbery.  She noticed the register drawer was pulled out and the plastic sleeve removed from the drawer.  The cash register was located on the other side of the counter, about five to eight feet away from the customer area.  Officer Dolinski lifted prints from the register drawer and placed them on a white fingerprint card in a sealed envelope.  She submitted the sealed envelope to Detective Parrott, who sent the prints to Mary Beth Thomas, a forensic scientist of the Illinois Crime Laboratory specializing in latent print examination.  Thomas scanned the fingerprint into AFIS, which returned 10 candidates.  She then physically compared the recovered print with the 10 candidates and concluded that there was only one possible match.  She obtained the card of the potential match and concluded to a reasonable degree of scientific certainty that the latent prints from the register drawer were defendant’s thumb prints.

Although the recovered prints were not complete, forensic scientist Thomas testified that she was certain the prints from the register and defendant’s prints were a match.  The recovered prints had all three degrees of quality and the prints contained no dissimilarities in those portions of the prints that were clear and without any air bubbles or smudges.  Thomas concluded to a reasonable degree of scientific certainty that “the person whose copy of the fingerprint card marked LaVance Brooks left both impressions on the latent lift.”

Defendant was arrested and told Detective Parrot that he had never been inside Hartigan’s Ice Cream Shop and he had never operated a cash register.  At the time of the arrest, defendant, an African-American man, was 5 feet 8 inches tall, weighed 200 pounds, and lived about a mile and a half from Hartigan’s.

Dion Sarthy, the clerk at Hartigan’s, testified that on February 18, 2000, as he opened the cash register drawer, two men appeared at the back of the store.  One of the men pointed a gun at him.  One man was about 5 feet 7 inches or 5 feet 8 inches tall and 180 pounds, he wore a red ski mask and carried a small chrome semiautomatic gun.  The other man was about 5 feet 9 inches tall and 160 pounds, and he wore an olive green trench coat, black pants, and a black ski mask.  Both men were African-American.  Sarthy testified that defendant was the approximate build of the man with the gun, but he could not say for certain that defendant was that man.  The men duct taped his hands and legs and asked him for money.  Sarthy told them there was money in the register and in an envelope on the desk.  The men placed Sarthy in the walk-in freezer.  After about 15 minutes, Sarthy walked out and noticed the cash register was empty.  He immediately called the police.  Defendant did not testify and called no witnesses.  The witnesses who testified for the State were not impeached in any significant manner.  The testimony from forensic scientist Thomas indicated that defendant’s prints were found on the cash register drawer.  The cash register was located five to eight feet from the customer area behind the counter.  

As previously noted, improper closing argument can implicate substantial rights.  
Keene
, 169 Ill. 2d at 23.  If the commentary has the effect of undermining the entire trial, reversal for a new trial is warranted.  
Keene
, 169 Ill. 2d at 23.  We do not believe that the limited comment made during the State’s opening closing statement affected defendant’s substantial rights or caused sufficient harm to have compromised the fairness or integrity of the trial process.  Since defendant was not prejudiced, there is no ground to excuse the procedural default.  For the reasons previously discussed, the single comment regarding the presumption of innocence made by the prosecution does not constitute reversible error because it caused no substantial prejudice to defendant. Consistent with Supreme Court Rule 615(a), “Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.”  134 Ill. 2d R. 615(a). 

D. Harmless Error

We cannot say, based on the record, that the result of the trial would have been different absent the comment made by the prosecution.  See 
People v. Simms
, 192 Ill. 2d 348, 397 (2000).  Based on the totality of the circumstances, including the evidence, the limited nature of the error, the fact that the misstatement did not occur in rebuttal, and the proper instructions given by the trial court following closing argument, we do not find the error outcome determinative.  The record reflects the jury verdict would have been the same absent the error.  The error resulting from the misstatement of law is harmless beyond a reasonable doubt.  
Chapman v. California
, 386 U.S. 18, 23-24, 17 L. Ed. 2d 705, 710-11, 87 S.Ct. 824, 827-28 (1967).

INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends he was denied the effective assistance of counsel.  Specifically, in support of that argument he relies on the fact that his trial counsel failed to invoke the Uniform Rendition of Prisoners as Witnesses in Criminal Proceedings Act (Act) (725 ILCS 235/6 (West 2000)) in order to secure the presence of alibi witness Robert Austin at trial.

The 
Strickland 
test guides our analysis of the ineffective assistance of counsel argument.  
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  To satisfy the 
Strickland
 test, defendant must demonstrate that: (1) his counsel’s performance fell below an objective standard of reasonableness; and (2) counsel’s deficient performance resulted in prejudice to defendant.  
Strickland
, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Competence of counsel is to be determined by the totality of counsel’s conduct.  
People v.
 
Morris
, 335 Ill. App. 3d 70, 78 (2002).  Effective assistance of counsel refers to competent, not perfect, representation.  
People v. Odle
, 151 Ill. 2d 168, 173 (1992).  In the instant case, defense counsel made various efforts to secure defendant’s alibi witness.  We note that defendant was at first  unable to give defense counsel the phone number or address of his alibi witness.  Eventually defense counsel obtained additional information from defendant’s friend and contacted the alibi witness, but defense counsel lost contact after both of the numbers were disconnected.  On the day of trial, defense counsel learned that the alibi witness was incarcerated in California and not expected to be released for an additional eight to nine months.  As a result, defense counsel filed a motion for continuance, which was denied by the trial court.  The record does not reflect that defense counsel’s representation of defendant fell below an objective standard of reasonableness as required by the first prong of the 
Strickland
 test.

We further note that the trial court’s ruling on a motion for continuance is a matter of discretion and will not be reversed absent an abuse of discretion and a clear showing of prejudice. 
 People v. Ward
,
 
154 Ill. 2d 272, 304 (1992);
 People v. Wilson
, 29 Ill. 2d 82, 91-92 (1963).  Under the Act, the trial court has the discretion to decide whether to enter an order directing compliance with the Act.  See 
People v. Moscatello
, 114 Ill. App. 2d 16 (1969).  Such an order is not automatic.  In relevant part, the Act provides as follows:

“If a person confined in a penal institution in any other state may be a material witness in a criminal action pending in a court of record *** in this State, a judge of the court may certify (1) that there is a criminal proceeding *** pending in the court, (2) that a person who is confined in a penal institution in the other state may be a material witness in the proceeding, *** and (3) that his presence will be required during a specified time.  The certificate shall be presented to a judge of a court of record in the other state having jurisdiction over the prisoner confined, and a notice shall be given to the Attorney General of the state in which the prisoner is confined.”  725 ILCS 235/6 (West 2000).

In the instant case, we cannot conclude that even if defense counsel had invoked the Act in order to secure the alibi witness for trial, the trial court would have granted a continuance and entered an order directing compliance with the Act.  When defense counsel asked for a continuance on the morning of trial, the trial court denied the request and  noted, “With all due respect, this case is more than two years old.  It is the fifth time it is set for a jury having previously been set August 14th
, August 20th, January 2nd, and February 4th.”  Based on the age and history of the case, the record does not reflect that the trial court, using its discretion, would have ruled any differently regarding the request for the continuance, even if defense counsel had invoked the Act.

In determining whether the denial of a request for a continuance sought to secure the presence of a witness was an abuse of discretion by the trial judge, the factors to be considered are: “(1) whether defendant was diligent; (2) whether defendant has shown that the testimony was material and might have affected the jury’s verdict; and (3) whether defendant was prejudiced.” 
 People v. Ward
, 154 Ill. 2d at 307, citing
 People v. Boland
, 205 Ill. App. 3d 1009, 1013 (1990); see also 
People v. McClain
, 343 Ill. App. 3d 1122, 1130 (2003), 
appeal denied
, No. 97119 (December 3, 2003).

Defendant contends that defense counsel was not diligent in securing the presence of the alibi witness.  As previously noted in our discussion regarding the first prong of the 
Strickland
 test, the record does not support defendant’s argument that defense counsel took no steps to secure the presence of the alibi witness during the five months immediately preceding the start of trial.  Rather, the record reflects continuing efforts to secure the alibi witness thwarted by various circumstances, including the fact that after defense counsel finally obtained a phone number and spoke to the alibi witness, contact was delayed because both numbers for the alibi witness were subsequently disconnected.  The record further reflects that the instant case previously had been set for trial but did not proceed to trial because the State changed its election and instead proceeded to trial against defendant on one of his pending drug cases.

Moreover, the record does not reflect that the testimony of the alibi witness would have impacted the jury’s decision.  Defense counsel indicated that Robert Austin would have provided an alibi in that defendant was  living with him in San Diego, California.  As the State notes, Austin was convicted of receiving stolen property and battery, placed on probation, and was serving time in the California penitentiary for a violation of his probation at the time of defendant’s trial.  The record does not reflect that the testimony of Austin, imprisoned for violating his probation for receiving stolen property and for battery, would have outweighed the evidence presented by the State. 

We recognize that convictions have been obtained and affirmed regardless of alibi testimony.  See, e.g., 
People v. Johnson
, 149 Ill. 2d 118 (1992) (evidence including the defendant’s fingerprints at the scene of the crime negated alibi defense).  Convictions have been affirmed based on fingerprint evidence.  E.g., 
People v. Ford
, 239 Ill. App. 3d 314, 317-18 (1992).  In the instant case, the defendant’s fingerprints were not merely discovered at the scene of the crime, but they were recovered from the cash register drawer.  That drawer was located on the other side of the counter, five to eight feet away from the customer area.  The clerk at the store, Dion Sarthy, although unable to positively identify defendant, testified that defendant was the approximate build, height, and weight of the masked man who pointed the gun at him, as well as the same race.  Based on the record, including the physical and circumstantial evidence, we cannot conclude that the testimony of the alibi witness, who was imprisoned for violating probation for receiving stolen property and committing a battery, would have changed the outcome of this case.  Mindful of the factors to be considered in determining whether the denial of a request for a continuance is an abuse of discretion, we do not find that the trial court’s denial of a continuance prejudiced defendant.

Moreover, for the reasons previously discussed, defendant did not satisfy the second prong of the 
Strickland
 test by demonstrating prejudice.  
We cannot conclude that even if defense counsel had produced the alibi witness at trial, the testimony of the alibi witness would have changed the outcome of the trial.

CONCLUSION

The single comment by the prosecution in closing argument misstated the law; however, the error was procedurally defaulted based on the nature and extent of the harm regarding the right affected and the nature and extent of the evidence.  Moreover, the error was harmless beyond a reasonable doubt and did not deny defendant a fair trial.  The record does not reflect that the result of the trial would have been different absent this single comment.

Defendant was not denied effective assistance of counsel when defense counsel failed to invoke the Uniform Rendition of Prisoners as Witnesses in Criminal Proceedings Act in order to secure the presence of the alibi witness, Robert Austin, at trial.  In the context of the 
Strickland
 test, defendant failed to demonstrate that defense counsel’s performance was deficient and that counsel’s performance resulted in prejudice.  It was not an abuse of discretion by the trial judge to deny defendant’s request for a continuance.  We cannot conclude, based on the record, that the outcome of the case would have been different had the alibi witness testified.  We affirm defendant’s conviction for armed robbery.

Affirmed.

GALLAGHER and SMITH, JJ., concur.