**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 34718**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2009 Opinion No. 64** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: September 9, 2009** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **SHARON K. ELDRED, aka SHARON KAY** | ) | |
| **ELDRED, SHARON KAY BAILEY,** | ) | |
| **SHARON KAY BAILY, SHARON KAY** | ) | |
| **STONE,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Gordon W. Petrie, District Judge.

Judgment of conviction for felony driving under the influence, affirmed.

Molly J. Huskey, State Appellate Public Defender; Heather M. Carlson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Sharon K. Eldred appeals from her judgment of conviction for felony driving under the influence (DUI), Idaho Code §§18-8004, 18-8005(7). Eldred argues the prosecuting attorney at trial committed prosecutorial misconduct requiring vacation of the judgment of conviction. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

A concerned citizen followed Eldred's vehicle on the highway after he witnessed Eldred swerve erratically across the lanes of traffic. After the citizen witnessed additional erratic driving, he called the police and reported Eldred's behavior. The citizen continued to follow Eldred while she weaved unpredictably. When Eldred eventually stopped her vehicle in a store

1

parking lot, the citizen and a second witness confronted her and tried to get her to take the keys out of the ignition. Eldred responded unintelligibly and drove out of the parking lot, running over flower beds. The citizen again followed Eldred's vehicle to a private residence. A police officer arrived and called for Eldred to stop several times as she walked unresponsively from her vehicle into the home. The officer followed her into the home and noted that, in addition to a strong odor of alcohol, Eldred spoke with slurred speech and had "glossy," red eyes. The officer escorted Eldred outside and attempted to perform field sobriety tests, but Eldred was noncompliant and combative. The officer arrested Eldred under suspicion of DUI. At the jail, Eldred was administered a breathalyzer test which indicated that Eldred's blood alcohol content was .264. The breathalyzer unit also reported that the reading was deficient for insufficient air flow. The officer observed that Eldred was attempting to appear to blow hard, but the unit was not receiving a strong air flow.

Eldred was charged with DUI which was enhanced to a felony based on a previous DUI conviction. After a jury trial, Eldred was found guilty of DUI and Eldred admitted her prior conviction for DUI. The district court sentenced Eldred to a unified term of ten years, with a minimum period of confinement of three years. Eldred appeals.

## II.

## ANALYSIS

Eldred argues that the prosecutor committed misconduct during closing argument by stating that Eldred's cloak of innocence had lifted, expressing an opinion of guilt, misrepresenting the burden of proof, misrepresenting evidence, and improperly appealing to the passions of the jury. Eldred acknowledges that no contemporaneous objections were made, but argues that the misconduct constitutes fundamental error. The state responds that the statements were not error, much less fundamental error.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she nevertheless is expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

When there is no contemporaneous objection, a conviction will be reversed for prosecutorial misconduct only if the conduct is sufficiently egregious so as to result in

fundamental error. *Id.* Prosecutorial misconduct rises to the level of fundamental error when it is calculated to inflame the minds of jurors and arouse prejudice or passion against the defendant, or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence. *State v. Kuhn*, 139 Idaho 710, 715, 85 P.3d 1109, 1114 (Ct. App. 2003). However, even when prosecutorial misconduct has resulted in fundamental error, the conviction will not be reversed when that error is harmless. *Field*, 144 Idaho at 571, 165 P.3d at 285. The test for whether prosecutorial misconduct constitutes harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would not have been different absent the misconduct. *State v. Pecor*, 132 Idaho 359, 368, 972 P.2d 737, 746 (Ct. App. 1998).

When the defendant does not object at trial, our inquiry is, thus, three-tiered. *See Field*, 144 Idaho at 571, 165 P.3d at 285. First, we determine factually if there was prosecutorial misconduct. If there was, we determine whether the misconduct rose to the level of fundamental error. Finally, if we conclude that it did, we then consider whether such misconduct prejudiced the defendant's right to a fair trial or whether it was harmless.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587.

Closing argument should not include counsel's personal opinions and beliefs about the credibility of a witness or the guilt or innocence of the accused. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. *See also State v. Garcia*, 100 Idaho 108, 110-11, 594 P.2d 146, 148-49 (1979); *State v. Priest*, 128 Idaho 6, 14, 909 P.2d 624, 632 (Ct. App. 1995); *State v. Ames*, 109 Idaho 373, 376, 707 P.2d 484, 487 (Ct. App. 1985). A prosecuting attorney may express an opinion in argument as to the truth or falsity of testimony or the guilt of the defendant when such opinion is based upon the evidence, but the prosecutor should exercise caution to avoid interjecting his or her personal belief and should explicitly state that the opinion is based solely on inferences from evidence presented at trial. *Phillips*, 144 Idaho at 86 n.1, 156 P.3d at 587 n.1. The safer course

3

is for a prosecutor to avoid the statement of opinion, as well as the disfavored phrases "I think" and "I believe" altogether. *Id.* Appeals to emotion, passion, or prejudice of the jury through the use of inflammatory tactics are impermissible. *Phillips*, 144 Idaho at 87, 156 P.3d at 588. *See also State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *Pecor*, 132 Idaho at 367, 972 P.2d at 745. Taking into account the permissible parameters afforded in presenting closing argument, we examine the three prosecutorial statements at issue.

In this case, the prosecutor began her closing argument stating:

> I talked a little bit during voir dire about a cloak of innocence being placed on Ms. Eldred's shoulders when she walked in that door, and it was a heavy cloak, because it is a heavy burden to remove it. And it is a burden that I, and I alone, must suffer. And it is a burden that I must present my testimony and I must show you my exhibits. And only through that, can that cloak be lifted.
> Ladies and gentlemen, the cloak has been lifted. Ms. Eldred is guilty of driving under the influence. And not just barely over the legal limit, but quite a bit over the legal limit.

The prosecutor then discussed the elements of the crime and the application of the evidence presented at trial to those elements. Eldred argues that the prosecutor misrepresented the burden of proof. Idaho courts have not specifically addressed the situation of a prosecutor referring to the removal of a defendant's cloak of innocence. In support of her argument, Eldred cites to cases from other jurisdictions that have scrutinized prosecutorial representations regarding the lifting of a defendant's cloak of innocence. However, as argued by the state, these cases can be distinguished from the present case on the basis that most of them involve a prosecutor's statement that the cloak has been lifted with no further explanation, which impermissibly shifts the burden of proof to the defendant before jury deliberation. Such misconduct occurred in the case of *People v. Brooks*, 803 N.E.2d 626 (Ill. App. Ct. 2004). In that case, the prosecutor told the jury during closing argument that the cloak of innocence was gone. *Id.* at 630. The court held that the statement was improper, in part, because it "did not indicate that after hearing the evidence the defendant was no longer cloaked in innocence." *Id.* Similarly, the Massachusetts Appeals Court held that it was misconduct for a prosecutor to argue during closing argument that "now [the cloak of innocence] comes off." *Commonwealth v. Pagano*, 710 N.E.2d 1034, 1039 (Mass. App. Ct. 1999). That court further clarified:

> The prosecutor's statement would not have been incorrect had he said that "the presumption of innocence . . . creates for every [d]efendant a cloak, a covering, a protection . . . unless and until evidence is presented . . . which would convince [the jury] beyond a reasonable doubt that the presumption . . . is

4

nonexistent." . . . Here, however, the prosecutor, instead of saying in clear terms where the burden of proof lay, mangled the "classical statement that the presumption of innocence continues throughout the case." . . . By emphasizing that at the end of the trial the "cloak comes off" the prosecutor may have suggested the defendant had some burden to prove his innocence. It is constitutionally impermissible to shift the burden of proving an element of the crime to the defendant.

*Id.* (citations omitted). We agree with the analysis employed in these cases.

In this case, the prosecutor reminded the jury of the heavy burden she had to prove Eldred's guilt and that she would need to present testimony and exhibits to do so. In fact, the prosecutor emphasized that it was only through her presentation of testimony and exhibits of Eldred's guilt that the cloak could be lifted. The prosecutor concluded that she had met her burden and that the cloak of innocence had lifted and that Eldred was guilty of DUI. The prosecutor then elaborated on how her conclusions were supported by the evidence presented at trial. The prosecutor correctly stated that she had the burden of removing Eldred's cloak of innocence and argued, in substance, that she had met that burden. The prosecutor's comment did not impermissibly shift the burden to Eldred.

Eldred further argues that the prosecutor's reference to the burden of proof as something the prosecutor must suffer improperly appealed to the passions of the jury. Eldred would have us read the prosecutor's statement with the most negative connotation. The Supreme Court of the United States has held:

Isolated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence . . . like all closing arguments of counsel, are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

*Donnelly v. DeChristoforo*, 416 U.S. 637, 646-47 (1974). The prosecutor's language, if anything, had the effect of enhancing the jury's understanding of her burden, not inciting emotions against Eldred. Therefore, we conclude that the prosecutor's statement that the burden of removing Eldred's cloak of innocence was one which the prosecutor must suffer was not an improper appeal to the passions of the jury.

Next, Eldred argues that it was misconduct for the prosecutor to express an opinion that "the cloak [of innocence] has been lifted" and "Ms. Eldred is guilty of driving under the influence." The Idaho Supreme Court has held that a prosecuting attorney may express an opinion in argument as to the guilt of the defendant when such opinion is based upon the evidence. *State v. McKeehan*, 91 Idaho 808, 821, 430 P.2d 886, 899 (1967). As with opinions of guilt, we conclude that it is not misconduct for the prosecutor to refer to the removal of the cloak of innocence when such opinion is based upon evidence presented at trial. The prosecutor's conclusion as to the removal of Eldred's cloak of innocence and her guilt of DUI was a permissible expression of opinion based upon the evidence presented at trial. Therefore, the prosecutor's statements did not constitute misconduct.

The next statement which Eldred argues was misconduct occurred later in the prosecutor's closing argument during her discussion of the evidence. The prosecutor stated:

> [The first citizen witness] testified that this whole process took almost two hours. For almost two hours, he followed Ms. Eldred hoping she wouldn't kill somebody, to the point he puts his flashers on, and talks about the fact that he was put there for a reason. . . . He truly believes he saved lives, and all because Ms. Eldred is driving . . . under the influence.
>
> [The witness] had never met Ms. Eldred before that day, hadn't met her since then. Did not know her. He was just an everday, average guy trying to save lives, and trying to prevent somebody from being hit as Ms. Eldred swerves across four lanes of traffic and almost hits the median.
>
> Swerves across four lanes of traffic, goes like she is going to take an exit.
>
> Goes through the dirt, swerves across a couple lanes of traffic, goes back over, and gets ready to take the next exit.
>
> Swerves back across. At this point in time, we are driving two lanes down the interstate. It is the afternoon. People are just driving the roads, you or I.
>
> She finally [exits], and he stops her, he and another car, another citizen. We don't even know who he is. He is just another average citizen. . . . Please, please take the keys out of the ignition and put them on the dashboard, and let us get you help.
>
> What is her reaction? She guns it, drives over a flower bed . . . and gets back out on the road.
>
> She slams on her brakes, throws the car in reverse, and comes flying backwards, and then starts driving again.
>
> And at this point . . . there are cars swerving out of the way to miss being hit by Ms. Eldred.
>
> . . . .
>
> All of this time, the defense would have you believe she is scared. It is that fear that is making her drive in a manner that could kill somebody.

6

Eldred argues that the prosecutor improperly appealed to the passions and emotions of the jury when she stated that ordinary people were driving down the highway, people like "you or I" and said that Eldred drove "in a manner that could kill somebody." Without expressing any opinion on whether these statements by the prosecutor were improper, we conclude that, even if the statements were improper, any resulting error did not rise to the level of fundamental error. The prosecutor's statements were made as a way to describe the extremely aberrant way that Eldred was driving as a result of her intoxication. They were not formulated in a way to induce fear by inviting jurors to imagine themselves or their loved ones as potential victims. The statements are not so inflammatory as to deprive Eldred of a fair trial.

The last comment which Eldred argues was misconduct occurred during the prosecutor's rebuttal closing argument. Trial counsel for Eldred argued to the jury that her erratic driving was a result of fear and that the results of the breathalyzer test were inaccurate because the sample was deficient. In rebuttal, the prosecutor stated:

> Both of [the officers] testified [the breathalyzer] is a valid test. The Intoxilyzer machine has a series of internal safeguards designed to give the benefit of the doubt to [Eldred according to the officer].
> Designed to keep those people that are under the influence off the road, and those people who are not to let them go.
> [Trial counsel] made a big deal about the deficient sample. But, she said a deficient sample is not an accurate reading.
> That's not the testimony I heard. And, in fact, that's not consistent to what is printed on the breath slip. A deficient sample is highest obtained.
> We didn't get that good bottom breath that [the officer] talked about, the good bottom breath that could have resulted in a higher blow.
> And, why? Because she didn't want to blow properly. She refused to blow properly.

At trial, the officer testified concerning Eldred's actions during the administration of the breathalyzer test: "[Eldred] was attempting to blow, but she was doing an exaggerated, you know, cheeks puffed out. It looked like she was blowing extremely hard, but the machine was indicating to me that it was not receiving." This testimony came after the officer had testified that Eldred was uncooperative and argumentative at the scene before being taken to the jail. The officer also testified that during his sixteen years of service, he had never encountered someone who was not able to blow long and hard enough to satisfy the requirements of the breathalyzer test.

It is well settled that both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *See Sheahan*, 139 Idaho at 280, 77 P.3d at 969; *Phillips*, 144 Idaho at 86, 156 P.3d at 587. In this component of the closing argument, the prosecutor asked the jury to infer from the evidence presented that the deficient breathalyzer test was a result of Eldred's lack of cooperation in correctly performing the procedure. This was a reasonable inference to draw from the evidence which was presented at trial and the prosecutor was allowed to fully discuss this evidence and inference with the jury. Therefore, the prosecutor's statement was not a misrepresentation of the evidence and did not constitute misconduct. None of the prosecutor's statements during closing argument constituted misconduct rising to the level of fundamental error.

## III.

## CONCLUSION

The prosecutor's statements during closing argument did not improperly state that Eldred's cloak of innocence had lifted, express an opinion of guilt, misrepresent the burden of proof, misrepresent evidence or appeal to the passions of the jury. The prosecutor's description of the potentially fatal effects of Eldred's criminal actions and description of those driving on the highway around Eldred as people like "you or I," even if error, do not rise to the level of fundamental error. Accordingly, Eldred's judgment of conviction for felony DUI is affirmed.

Chief Judge LANSING and Judge GRATTON **CONCUR**.