2023 IL App (1st) 220042-U

FIRST DISTRICT,
FIRST DIVISION
June 12, 2023

No. 1-22-0042

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 18 CR 08079 |
| | ) | |
| ANDREW COFFILL, | ) | Honorable |
| | ) | Angela Munari Petrone, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Pucinski and Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's convictions for predatory criminal sexual assault of a child are affirmed where the evidence was sufficient to support the convictions and the prosecutor's remarks in closing arguments did not constitute reversible error.

¶ 2    Following a jury trial, defendant Andrew Coffill was convicted of predatory criminal sexual assault of a child and aggravated criminal sexual abuse for repeatedly engaging in sexual conduct with A.A. while she was between the ages of three and eleven. Defendant was sentenced to consecutive terms of seven years' imprisonment for two counts of predatory criminal sexual assault of a child and six years' imprisonment for the remaining three counts of predatory criminal sexual assault of a child. Defendant was also sentenced to five concurrent terms of three years'

imprisonment for the counts of aggravated criminal sexual abuse, to be served consecutively to the counts of predatory criminal sexual assault of a child for a total term of 35 years in the Illinois Department of Corrections. On appeal, defendant argues that the State failed to prove him guilty beyond a reasonable doubt of predatory criminal sexual assault of a child as alleged in three counts of the indictment and the prosecutor made improper remarks during closing arguments. For the following reasons, we affirm.

¶ 3                                                BACKGROUND

¶ 4        Defendant was charged with multiple counts of predatory criminal sexual assault of a child and aggravated criminal sexual abuse after A.A. reported that he sexually assaulted her repeatedly between January 2005 and January 2013.

¶ 5                                                 Pre-Trial

¶ 6        Prior to trial, defendant filed a motion for a bill of particulars, requesting that the State provide the "dates, times, and locations of the alleged occurrences" because the indictment failed to "specify with particularity *** [t]he exact dates and times of the occurrences and their durations and *** [t]he exact street, address, and any physical description of the locations of the occurrences." In response, the State asserted that the time frame of the alleged acts could not be narrowed down and was "within what's required to charge a case." The trial court denied defendant's motion and ruled that "the State has given what the law requires."

¶ 7                                                Jury Trial

¶ 8        A.A. testified that she was 19 years old and was born on January 4, 2002. When she was two years old, A.A. moved to Chicago with her mother, B.S., father, D.S., younger brother, I.S., and younger sister, S.S. A.A.'s parents divorced when she was in the second grade. Defendant was born January 2, 1979, and was a "long-term family friend" that A.A. had known since she moved to Chicago. A.A. saw defendant "[e]very day" and he often babysat for A.A. and her siblings.

¶ 9    Defendant lived in an apartment near Western Avenue and Devon Avenue. Defendant's bedroom was a converted storage room connected to the kitchen, and defendant's father stayed in a bedroom located through the living room and down a hallway. A.A. and her siblings occasionally slept at defendant's apartment. At first, A.A. slept in defendant's bed with him, I.S. slept on a bean bag in defendant's room, and S.S. slept on the couch in the living room. Defendant later bought a futon to sleep on with A.A. and I.S.

¶ 10    When she was "seven or eight" years old, D.S. moved in with defendant and slept in the living room "[o]n and off for about a year." Defendant would make "a scene" and "make [her] feel bad" for wanting to sleep in the room with her father, so A.A. "slept in the room with [defendant]."

¶ 11    A.A. and her siblings spent "[e]very weekend" with defendant while their father was gone. After school on Fridays, A.A. and her siblings went to defendant's apartment and returned home on Sundays after he took them to church. When defendant took them shopping, he bought A.A. almost "whatever [she] wanted" while her brother and sister did not get as much. A.A. identified herself in two photos with defendant, one taken when she was "seven or eight" and another taken when she was "[a]round nine or ten."

¶ 12    A.A. testified she was "too young to remember" how old she was the first time defendant "touched [her] in a way that [she] didn't like," but she knew it was before her sixth birthday. Defendant gave her a stuffed animal sprayed with his cologne for her sixth birthday and tried to touch her vagina over her clothing but was interrupted by another adult. A.A. explained that "by then [the touching] was *** a normal routine." The first time defendant touched A.A., they were in his bed while her siblings were watching a movie and defendant touched her "under [her] clothes." A.A. estimated that she was "[a]round four or five" when defendant first touched her. Defendant first used his hands to touch A.A.'s breasts, buttocks, and vaginal area, then touched "the inside" and "the out" of A.A.'s vagina, over and under her clothes. Defendant and A.A.

showered together and defendant would "soap [her] up" and touch her chest, buttocks, and vagina. Defendant bit A.A.'s breast, but not hard enough to leave a mark. Defendant told her "[i]t was because he loved [her] and he wouldn't do anything to hurt [her]."

¶ 13      Defendant's conduct progressed to attempting to insert his fingers into A.A.'s vagina. When A.A. complained that it hurt, defendant pulled his fingers out but "would try to put his fingers in until eventually they fit." Defendant did this "[a]nywhere he could—his house, [A.A.'s] house if [her] parents weren't home, church, parks." Specifically, defendant brought A.A. to a storage room at North Baptist Church to touch her. This happened "maybe four or five times," but defendant did not progress beyond putting his fingers in her vagina at the church. At the park, defendant took A.A. into a "hiding area *** built into the playground," took her underwear off, touched her, and kept her underwear in his pocket. This happened "more than four or five" times.

¶ 14      Defendant performed "oral sex" on A.A. by putting his mouth on her vagina. Defendant put his "whole mouth ** his tongue, everything" inside her vagina. A.A. did not recall how old she was when this started but stated that it was sometime before defendant began inserting his fingers into her vagina. This happened in defendant's bedroom and in a room in the basement of the building. A.A. did not recall how many times this happened.

¶ 15      After defendant was able to force his finger into A.A.'s vagina, he began to "try and stick the tip of his penis in." A.A. was in "fourth or fifth grade" when defendant first tried to put his penis in her vagina. They were in defendant's bedroom while A.A.'s siblings were in the living room watching TV. A.A. told him that it hurt, and defendant replied, "[E]ventually it will feel good *** just let the process happen because eventually [defendant] would fit." When defendant was unable to force his penis inside A.A.'s vagina, he would rub his penis against her vagina until he ejaculated. Defendant ejaculated on A.A.'s body and licked it off her. Defendant repeated this "too many times."

¶ 16    A.A. was "nine or ten" when defendant first put his penis fully inside her vagina. They were on the floor of defendant's living room behind a couch. A.A. felt pain in her vagina and told defendant it hurt. After "five or ten minutes," defendant removed his penis and A.A. noticed blood coming from her vagina. Defendant followed A.A. to the shower and washed her off, and she began to cry. Defendant put his penis in A.A.'s vagina two more times. Defendant ejaculated inside of A.A.'s vagina. When A.A. told defendant she did not want to have intercourse, he hit her with a belt and left her naked in the cold. Defendant threatened to "take [A.A.] away from [her] family."

¶ 17    A.A. also described incidents in which defendant would "force [her] head down onto his penis." Defendant's penis went into A.A.'s mouth "[a]lmost every time he tried," though A.A. did not remember how old she was at the time. Defendant also grabbed her hand, put it on his penis, and moved it "up and down on his penis."

¶ 18    A.A. was 10 years old the last time defendant put his penis in her vagina. After this, A.A. told her mother that she "felt uncomfortable being around him." Thereafter, her mother "slowly stopped *** communication" and defendant ceased visiting their house.

¶ 19    At some point while her family lived on Wilson Avenue, A.A. and S.S. got into an argument about how defendant "treated [A.A.] different." A.A. told her that it was not "her choice." A.A. told S.S. that defendant touched her but did not go "into detail." A.A. estimated that she was "maybe eight or nine" when she told S.S. A.A. did not tell anyone else about defendant's actions. S.S. told their mother, but A.A. denied it "for years" until S.S. told their high school counselor. A.A. later participated in a videotaped interview at the Children's Advocacy Center ("CAC"). She testified that defendant's conduct occurred when she was between 3 and 11 years old.

¶ 20    On cross-examination, A.A. acknowledged that she did not tell the high school counselor about what happened and that she told the CAC interviewer that she did not remember the first

time defendant touched her. Defense counsel asked A.A. about a time where defendant touched her "under a bridge." A.A. explained that the bridge was near Lincolnwood Mall, and that defendant would "undress [her] from the bottom down and touch [her], sometimes rub his penis against [her] vagina."

¶ 21        I.S. testified that he was 17 years old and had known defendant his whole life. When they were younger, I.S. and his sisters, A.A. and S.S., saw defendant every week. When they stayed at defendant's apartment, I.S. slept on the floor of defendant's bedroom while A.A. slept in defendant's bed with him. Later, I.S. joined A.A. and defendant on the new futon. One morning when he was "around eight, nine," I.S. woke up on the floor and saw A.A. and defendant standing naked by a dresser. I.S. told his mother and she confronted defendant.

¶ 22        One night in 2012, I.S. was walking their dog with defendant, A.A., and S.S. Defendant held I.S. back while A.A. and S.S. walked ahead. Defendant asked I.S. "if he should wait for [A.A.] to turn 18 or if he should find himself another woman." I.S. told his parents' friend, Aloe, about defendant's question. Shortly thereafter, the family's relationship with defendant changed and I.S. had no further contact with defendant.

¶ 23        S.S. testified that she was 18 years old and had known defendant since she was "a few months old." Defendant took S.S. and her siblings to North Baptist Church "[e]very Sunday" when they were younger. The siblings stayed at defendant's apartment "[e]very weekend," and S.S. slept on the couch in the living room while I.S. and A.A. slept in defendant's bedroom. One night when S.S. was "around *** eight through ten years old" and A.A. was 11 or 12, A.A. was awake crying and S.S. asked if it was because she missed defendant. A.A. told her not to say his name and that defendant had "hurt" her. A.A. asked her not to tell anyone because "she was afraid of getting in trouble."

¶ 24        When S.S. was a freshman in high school, around 14 or 15 years old, she told her counselor

what A.A. told her about defendant. On cross-examination, she explained that she told the counselor because "it was eating [her] up too much, and [she] was too busy *** harming [herself], instead of *** facing *** what the actual problem was."

¶ 25    B.S. testified that her husband, D.S., had known defendant since high school and they "reconnected" when the family moved back to town. Defendant would watch the three children at his apartment "once a week *** every other weekend sometimes" in order "to give [B.S. and D.S.] a break" or when they were working.

¶ 26    B.S.'s relationship with defendant changed in 2012 after an argument around Easter. A.A. was ten or eleven years old at the time. B.S. acknowledged that she confronted defendant after I.S. told her that he saw defendant naked with A.A. but could not recall when it happened. Defendant and A.A. denied the incident. B.S. received a call from A.A. and B.S.'s high school counselor in the spring of 2018. B.S. learned that something happened between A.A. and defendant but A.A. "didn't want to talk about it."

¶ 27    At the end of the trial, the jury found defendant guilty of five counts of predatory criminal sexual assault of a child and five counts of aggravated criminal sexual abuse. Defendant was sentenced to a total term of 35 years' imprisonment.

¶ 28                                    ANALYSIS

¶ 29                          Sufficiency of the Evidence

¶ 30    Defendant first contends that the State failed to prove him guilty beyond a reasonable doubt of predatory criminal sexual assault of a child as alleged in three counts of the indictment. Specifically, defendant argues that the State failed to "establish a general time frame" for counts that alleged (1) contact between defendant's penis and A.A.'s mouth (count 1); (2) contact between defendant's mouth and A.A.'s vagina (count 8); and (3) intrusion of defendant's finger into A.A.'s vagina (count 9).

¶ 31        In reviewing the sufficiency of the evidence, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not retry the defendant or substitute its judgment for that of the trier of fact on the weight of the evidence or credibility of witnesses. *People v. Brown*, 2013 IL 114196, ¶ 48. "We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." *People v. Collins*, 214 Ill. 2d 206, 217 (2005).

¶ 32        As charged here, a person commits the offense of predatory criminal sexual assault of a child when he is 17 years of age or older and "commits an act of contact, however slight, between the sex organ or anus of one person and the part of the body of another for the purpose of sexual gratification or arousal of the victim or the accused, or an act of sexual penetration, and *** the victim is under 13 years of age." 720 ILCS 5/11-1.40(a)(1). The Criminal Code defines "sexual penetration" as "any contact, however slight, between the sex organ or anus of one person and *** the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any part of the body of one person *** into the sex organ or anus of another person, including but not limited to, cunnilingus, fellatio, or anal penetration." 720 ILCS 5/11-0.1. Evidence is sufficient to support a conviction for predatory criminal sexual assault of a child if the victim describes (1) the kind of acts committed with sufficient specificity, (2) the number of acts committed with sufficient specificity, and (3) the time period the acts occurred generally. *People v. Letcher*, 386 Ill. App. 3d 327, 334 (2008).

¶ 33        It is undisputed that defendant was over 17 years old and that A.A. was under 13 years old when the charged offenses were committed, and that the conduct alleged in counts 1, 8, and 9, constituted predatory criminal sexual assault of a child. The issue is whether the dates charged in

the indictment are sufficient and supported by the evidence. Our supreme court has recognized that "it is often difficult in the prosecution of child sexual abuse cases to pin down the times, dates, and places of sexual assaults, particularly when the defendant has engaged in a number of acts over a prolonged period of time." *People v. Bishop*, 218 Ill. 2d 232, 247 (2006).

¶ 34      In cases involving child sexual abuse, the precise date of an offense "is not an essential factor" and the State is not required to prove it. *People v. Guerrero*, 356 Ill. App. 3d 22, 27 (2005). "The inability to remember exact dates and times merely affects the weight to be given the testimony and taken alone, does not create reasonable doubt." *People v. Foley*, 206 Ill. App. 3d 709, 815 (1990). In *Guerrero*, we held that "[a]s long as the crime occurred within the statute of limitations and prior to the return of the charging instrument, the State need only provide the defendant with the best information it has as to when the offenses occurred." *Guerrero*, 356 Ill. App. 3d at 27.

¶ 35      Regarding count 1, alleging contact between defendant's penis and A.A.'s mouth, A.A. testified that defendant would "force [her] head down onto his penis." Defendant did this "[t]oo many" times and his penis went into A.A.'s mouth "[a]lmost every time he tried." A.A. testified that she did not remember how old she was at the time. Though not specific to penis-to-mouth contact, A.A. testified that "[e]verything [she] described" happened "between sometime after [she] turned three and all the way through sometime before [she] turned 11." A.A. was born on January 4, 2002, and accordingly the dates charged in the indictment—January 4, 2008, and January 3, 2013—were reflected in the testimony. While A.A. was unable recall exact dates of the penis-to-mouth contact, this alone does not create reasonable doubt. *Foley*, 206 Ill. App. 3d at 815.

¶ 36      With respect to count 8, alleging contact between defendant's mouth and A.A.'s vagina, A.A. testified that defendant put his "whole mouth ** his tongue, everything" inside her vagina. A.A. did not recall how old she was when this began or how many times it happened. However,

in addition to A.A.'s all-encompassing testimony that the abuse happened between her third and eleventh birthdays, A.A. also testified that defendant performed "oral sex" on her at defendant's apartment and before he began inserting his fingers in her vagina. A.A., I.S., S.S. and B.S. all testified that the children had ceased visiting defendant's apartment before A.A. was 11 years old.

¶ 37   Finally, concerning count 9, alleging an intrusion of defendant's finger into A.A.'s vagina, A.A. testified that defendant "put his finger into [her] vagina" at "all" of the houses she lived in between ages three and 11. A.A. also testified that defendant put his fingers in her vagina at his apartment, at church, under a bridge, and at the park. When A.A. was in "fourth or fifth grade," defendant was able to force his finger entirely into her vagina. He then began attempting to force his penis in her vagina.

¶ 38   In arguing that the State failed to establish "a general time frame" for each of the three offenses, defendant relies on *People v. Letcher*, 386 Ill. App. 3d 327, 336 (2008). In *Letcher*, the defendant was charged with numerous counts of predatory criminal sexual assault of a child, including "six specific counts of penile penetration." *Id*. at 328, 336. "Before [the victim] was asked if incidents occurred more than five times, she made a general reference to 'touching' in 'unavailable places,' including her breasts, and there were no specific questions about penetration." *Id.* at 336. We held that those circumstances alone were not enough to establish the defendant's guilt for the "six specific counts of penile penetration" beyond a reasonable doubt. *Id.* at 335-36.

¶ 39   In contrast, the charges in this case contain a *single* count of three forms of predatory criminal sexual assault of a child. Each of the counts alleges that the offenses occurred between January 4, 2007, or January 4, 2008, and January 3, 2013. A.A. explicitly testified to repeated conduct supporting each allegation. Although A.A. was unable to recall the exact dates of each

occurrence of abuse, defendant was charged with only a single instance of each form of contact or penetration at issue.

¶ 40      The time frames for each offense, as identified by A.A. and reasonably inferred from other evidence, were sufficiently specific. A.A.'s credibility regarding when and how often these incidents occurred was for the jury to weigh and resolve. The fact that A.A. was unable to provide specific dates is not fatally detrimental as victims of repeated abuse are typically "unable to furnish many specific details, dates, or distinguishing characteristics as to individual acts or assaults." *Letcher*, 386 Ill. App. 3d at 333. Taken in the light most favorable to the State, the evidence was sufficient to sustain defendant's convictions.

¶ 41                                Closing Argument

¶ 42      Defendant argues that the prosecutor made "misstatements of the evidence" that "filled in the gaps in A.A.'s testimony" and "improperly bolstered the State's case."

¶ 43      Although defendant acknowledges this claim was not preserved for appeal, he seeks review under the plain error doctrine or as an ineffective assistance of counsel claim. Pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), defendant must show that his counsel's representation "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Counsel is not ineffective for failing to preserve meritless issues. *People v. Coleman*, 158 Ill. 2d 319, 349 (1994).

¶ 44      The plain error doctrine permits a reviewing court to consider an unpreserved error when a clear or obvious error occurred and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People*

*v. Piatowski*, 225 Ill. 2d 551, 565 (2007). Under either prong, the burden of persuasion rests with the defendant. *People v. Sargent*, 239 Ill. 2d 166, 190 (2010).

¶ 45    The State "is afforded a great deal of latitude in presenting closing argument and is entitled to argue all reasonable inferences from the evidence." *People v. Moore*, 358 Ill. App. 3d 683, 693 (2005). While argument cannot be based on a misstatement of the evidence, a single "prosecutorial misstatement does not necessarily deprive a defendant of a fair trial" unless the remark results in " 'substantial prejudice to the defendant and constitutes a material factor in his conviction.' " *People v. Jackson*, 2012 IL App (1st) 102035, ¶ 18 (quoting *People v. Brooks*, 345 Ill. App. 3d 945, 951 (2004)).

¶ 46    Defendant contends that three comments made by the State during closing argument "filled in the *** gaps in A.A.'s testimony with facts not presented at trial." We find that the arguments were properly based on the evidence and not unduly prejudicial.

¶ 47    First, the State argued:

"[A.A.] told you that [defendant] would insert his finger into her vagina ***. She also told you about the park, that [defendant] would take her to the park and *there was a hidden area where he would take her and he would remove her underwear and put his fingers on her vagina*." (Emphasis added).

¶ 48    This comment accurately reflected A.A.'s testimony that defendant touched her vagina "[a]nywhere he could – his house, my house if my parents weren't home, church, *parks*." (Emphasis added). At the park, defendant took A.A. into a "hiding area *** built into the playground," took her underwear off, touched her, and kept her underwear in his pocket. A.A. explained that defendant "would just touch. He never inserted his fingers" at the park. The prosecutor's comment was based on the evidence at trial.

¶ 49        Defendant argues that the prosecutor's comment came "in support of the [predatory criminal sexual assault] count of finger insertion" but A.A. never testified that defendant put his fingers in her vagina at the park, and potentially confused the jury. Defendant was charged with a single count of predatory criminal sexual assault of a child based on intrusion of defendant's finger into A.A.'s vagina. This was supported by A.A.'s testimony that defendant *inserted* his fingers in her vagina while they were at her house, at church, and in the basement of his apartment building. The prosecutor's comments properly distinguished between defendant putting his finger "on" her vagina while in the hidden area of the park and putting his finger "into" A.A.'s vagina.

¶ 50        Next, the State argued:

> "[A.A.] told you that on more than one occasion [defendant] would go to her, he would try to put his penis in her mouth, that his penis would go in her mouth and that this happened over that span of time, *his house, her house, her different houses, wherever he could*." (Emphasis added).

¶ 51        While A.A. did not specify exactly where this conduct occurred, she testified that it happened "[t]oo many" times during the time she spent with defendant. A.A. was with defendant at her family's house, defendant's house, and other locations including parks, bridges, and church. Additionally, throughout her testimony, A.A. repeated that defendant abused her "[a]nywhere he could" and "whenever he could." The prosecutor's argument was properly based on the evidence.

¶ 52        Last, the State argued: "The next act is [defendant]'s mouth and [A.A.]'s vagina. *** [A.A.] told you that he *did it wherever he could, in the shower*, most of the time in *his bedroom*, in his bed where he had her sleep with him, *in the basement*." (Emphasis added). A.A. testified that defendant put his "whole mouth ** his tongue, everything" inside her vagina while they were in his bedroom and in a room in the basement of the building. A.A. also testified that defendant

put his mouth on her breast while they showered together. This argument was also properly based on the evidence.

¶ 53 Even assuming *arguendo* that the prosecutor's remarks were improper, the trial court admonished the jury that "[w]hat the attorneys say during closing arguments is not evidence and should not be considered by you as evidence" and that "[n]either opening statements nor closing arguments are evidence and any statement or argument made by an attorney which is not based upon evidence should be disregarded." As the court provided "sufficient instructions to preempt consideration of potentially improper comments as evidence" (*People v. Moody*, 2016 IL App (1st) 130071, ¶ 79), we cannot say that the prosecutor's remarks affected the outcome of the trial.

¶ 54 Defendant also argues that the State improperly defined reasonable doubt during closing argument. "Attempts to explain the reasonable doubt standard have been disfavored by the courts because 'no matter how well-intentioned, the attempt may distort the standard to the prejudice of the defendant.' " *People v. Burney*, 2011 IL App. (4th) 100343, ¶ 67 (quoting *People v. Keene*, 169 Ill.2d 1, 25 (1995)). However, "both the prosecutor and defense counsel are entitled to discuss 'reasonable doubt and to present his or her view of the evidence [presented] and to suggest whether the evidence supports reasonable doubt.' " *Moody*, 2016 IL App (1st) 130071, ¶ 61.

¶ 55 In this case, the prosecutor remarked in rebuttal, "It's our burden to prove this case beyond a reasonable doubt. \*\*\* *It's not beyond all doubt or a shadow of a doubt*." (Emphasis added). We have repeatedly held that this exact statement is not an improper attempt to define reasonable doubt. See, *e.g.*, *Moody*, 2016 IL App (1st) 130071, ¶¶ 63-64; *People v. McGee*, 2015 IL App (1st) 130367, ¶¶ 59-60; *People v. Sullivan*, 2014 IL App (3d) 120312, ¶¶ 24, 30. Accordingly, this remark did not diminish the prosecution's burden of proof and was not error.

¶ 56 We find that the challenged remarks were not so improper or so prejudicial that justice was denied or that the jury's verdict may have resulted therefrom. See *People v. Jackson*, 2020 IL

124112, ¶ 88. Therefore, defendant is not entitled to review of his claim under principles of plain error or as a claim of ineffective assistance of counsel.

¶ 57                                    CONCLUSION

¶ 58         For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 59         Affirmed.